502 P.2d 1124 (1972)
GODWIN-BEVERS CO., INC., a Colorado corporation, Plaintiff-Appellee,
v.
G. P. ENTERPRISES, INC., a Colorado corporation, et al., Defendants-Appellants, and
Mowry C. Gilbert, Third-Party Defendant.
No. 71-100.
Colorado Court of Appeals, Div. I.
September 19, 1972.
Rehearing Denied October 11, 1972.
*1125 Horn, Anderson & Johnson, Louis Johnson, Colorado Springs, Grant, Shafroth, Toll & McHendrie, Denver, Smith & Duncan, Colorado Springs, for plaintiff-appellee.
Gibson, Gerdes, Campbell & Abrahm, Fillmore S. Gibson, Colorado Springs, for defendants-appellants.
Not Selected for Official Publication.
SMITH, Judge.
Controversy in this case evolved from the inadequacy of certain air conditioning and heating systems designed and installed by Godwin-Bevers Co. pursuant to a written contract. On June 25, 1965, Godwin-Bevers Co. contracted with G. P. Enterprises, Inc., for the construction of a medical building on its property. Thereafter, a similar oral agreement between the parties resulted in the construction of four shopping center buildings adjacent to the medical building. After completion of construction, G. P. Enterprises could not pay the entire amount due. Godwin-Bevers subsequently filed a mechanics lien on these buildings for the deficit of $74,674.42 and began foreclosure proceedings.
A meeting was arranged March 23, 1966, to discuss additional financing for G. P. Enterprises, so that the lien could be released. Present at that meeting were B. C. Godwin and William C. Bevers of Godwin-Bevers Co., Joseph Pieper and Dr. Kenneth P. Gloss of G. P. Enterprises, and certain others with an interest in the land and buildings owned by G. P. Enterprises. The lien was satisfied when Pieper and Gloss each personally advanced $30,000, and Moore Mortgage Company, holder of a deed of trust on the property, advanced the balance. Since the shopping center suites needed to be modified to suit the needs of the prospective tenants, an agreement was entered into at that meeting whereby Godwin-Bevers would either loan defendants the amount necessary to do this additional work, not to exceed $20,000, or would do the work themselves. Subsequently, Godwin-Bevers completed all the additional work.
After the meeting of March 23, 1966, a letter was sent to Pieper and Gloss from Godwin-Bevers, stating that if Godwin-Bevers loaned G. P. Enterprises money, Pieper and Gloss would become personally liable. There was no evidence that either Pieper or Gloss ever signed the letter. After doing the work, Godwin-Bevers charged G. P. Enterprises $14,871.62. Upon G. P. Enterprises' failure to pay, Godwin-Bevers initiated the present action against G. P. Enterprises and Pieper and Gloss, as individuals, under the agreement of March 23, 1966, for the cost of the work done.
The defendants' answer denied that Pieper or Gloss, as individuals, entered into an agreement, but it was admitted that G. P. Enterprises did enter into an agreement with plaintiff. It further denied that the letter was the agreement or represented the terms agreed upon. Defendants asserted that any such agreement was conditional on plaintiff's performance of construction in a good and workmanlike manner and the remedying of all defects and deficiencies. In addition, defendants counterclaimed alleging that plaintiff had designed, engineered and constructed the buildings in an unskillful and negligent manner with unsuitable and inadequate material and equipment.
The trial court found plaintiff's claim to be valid on the basis of the oral agreement entered into on March 23, 1966. The letter was found inadequate as a memorandum of the contract and the court looked to the *1126 circumstances surrounding the meeting, the letter, and the agreements of the parties to determine the full intent of the parties. The court concluded that the individual defendants intended and knew that they were to be personally liable whether plaintiff did the work, or whether, pursuant to the agreement, plaintiff loaned defendants the amount necessary to do the work.
Defendants argue that personal liability was not to accrue if Godwin-Bevers did the work, but we must agree with the trial court's conclusion that inasmuch as G. P. Enterprises was without funds or assets at the time of the March 23, 1966, agreement, it is doubtful that plaintiff would do the work without the pledge of the personal liability of Pieper and Gloss.
Defendants contend that the agreement of March 23, 1966, was void for lack of consideration or non-enforceable under the Statute of Frauds, C.R.S.1963, 59-1-12(1)(c). Performance having been completed, both contentions are based upon the premise that the agreement was not an original agreement but a collateral agreement to assure payment of a debt existing under the previous building contracts. The finding of the trial court that this was a separate agreement is supported by the evidence, and we will not overturn it. Adler v. Adler, 167 Colo. 145, 445 P.2d 906. This finding also disposes of defendants' contention that the overhead and profit charge was unreasonable, since the only basis for this agreement is that the work was done collaterally under the original construction agreement, which specified a smaller overhead and profit charge, and not pursuant to a new agreement. The court entered judgment for plaintiff against all defendants upon its finding that the work was done pursuant to the separate agreement. We perceive no error and affirm that judgment.
Concerning defendants' counterclaim, the trial court found the heating and air conditioning deficient as initially designed and installed. Further, the court found that plaintiff was negligent in not having remedied these defects within the year of warranty. The court concluded that plaintiff had thereby breached the initial construction contract entered into by the parties. The court further found that although defendants had attempted to repair the heating and air conditioning system, extensive changes were still necessary to make the system conform to the original contract. The cost estimates of redesigning and reconstructing the system presented by defendants were considered by the court to be "excessive." In view of the fact that the defendants had sold the medical building during the time the suit was pending, the court allowed defendants damages measured by the sum of the amounts paid in defendants' attempts to correct the system, over and above ordinary maintenance and repair up to the time of sale.
In so doing, the court applied the wrong measure of damages. Damages for defective construction shall be the cost or expense of putting the work in the condition called for by the contract, except where unreasonable economic waste would result. Campbell v. Koin, 154 Colo. 425, 391 P.2d 365; Shiffers v. Cunningham Shepherd Builders Co., 28 Colo.App. 29, 470 P.2d 593. Where unreasonable economic waste would occur in completing the construction contract as specified, the damages awarded will be an amount equal to the difference between the market value of the structure if completed in accordance with the contract and the market value of the imperfect structure as built. Summit Construction Co. v. Yeager Garden Acres, Inc., 28 Colo.App. 110, 470 P.2d 870.
The court should have awarded the cost of bringing the buildings into compliance with the contract, or, if it found that to do so would constitute unreasonable economic waste, it should have applied the diminution of market value test. The fact that the defendants sold the buildings is immaterial. The right to damages for plaintiff's breach of the original construction contract was vested in the defendants and was not transferred in any manner with the sale of *1127 the building. See J. Sutherland, Damages § 7 (4th ed.).
We affirm the judgment of the trial court, entered upon plaintiff's claims, and its finding of plaintiff's liability on the counterclaim of defendant, but reverse on the issue of the amount of defendants' damages for breach of the initial contract. The cause is remanded to the trial court with instructions to determine defendants' damages in accordance herewith.
SILVERSTEIN, C. J., and DWYER, J., concur.